# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ANTHONY MUSZYTOWSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>RECEIVABLES PERFORMANCE MANAGEMENT LLC,<br><br>Defendant. | Case No.: 18-cv-1018<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Anthony Muszytowski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Receivables Performance Management, LLC ("RPM") is a debt collection agency with its principal place of business located at 20816 44th Ave West Lynnwood, WA 98036.

6. RPM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. RPM is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

8. On or about November 15, 2017, RPM mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "U.S. Cellular" ("USC"). A copy of this letter is attached to this complaint as Exhibit A.

9. The alleged debt referenced in Exhibit A is an alleged personal cellular phone service account.

10. Plaintiff used his cell phone for personal, family, or household purposes. Plaintiff did not open or use the cell phone for business purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by RPM to attempt to collect alleged debts.

13. Upon information and belief, Exhibit A is the first written communication Plaintiff received from RPM in reference to the alleged USC debt referenced in Exhibit A.

14. Exhibit A contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

15. Pursuant to the FDCPA's statutory mandate, Exhibit A informs the consumer that he or she has thirty days to dispute the debt.

16. Exhibit A contains false, deceptive, misleading, and confusing representations about when the thirty-day validation period begins.

17. The header in Exhibit A states:

```
Reference Number:   ████2391
Creditor:           U.S. Cellular
Creditor Account#:  ████7543
Original Creditor:  U.S. Cellular
Date:               01-27-17
Amount:             $148.44
Amount Due:         $148.44 (U.S. FUNDS ONLY)
```

Exhibit A.

18. Exhibit A also contains a payment remittance slip, which states:

```
Notice Date:.............11-15-17
Fecha de notificación
Amount Due:..............$148.44
Cantidad adeudada
Creditor Account#:.....████7543
Acreedor Cuenta#
```

Exhibit A.

19. The header in Exhibit A states that the "Date" is January 27, 2017 but the payment remittance slip in Exhibit A states that the "Notice Date" is November 15, 2017.

20. Because the header in the letter states that the "Date" is January 27, 2017, the unsophisticated consumer, receiving Exhibit A would be confused and misled about when Exhibit A was actually mailed, and would have no idea why he received RPM's letter months after the "Date" stated in the header.

3

21. Based on the January 27, 2017 date stated in the header in <u>Exhibit A</u>, the consumer would assume the thirty-day validation period had already expired.

22. Moreover, even assuming the consumer actually saw the "Notice Date" stated in the payment remittance slip in <u>Exhibit A</u>, he would be confused and misled to believe that the validation period ended or began with the "Notice Date."

23. In fact, the validation period begins to run when the consumer receives the letter, not when the debt collector mails it. 15 U.S.C. § 1692g(a)(3)-(5); *see Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518-19 (7th Cir. 1997).

24. The conflicting and confusing dates stated in <u>Exhibit A</u> are inconsistent with and overshadow the statutory notice that the validation period gives the consumer "30 days *after receiving this notice*" to dispute the debt. <u>Exhibit A</u>; *see also*, 15 U.S.C. § 1692g(a)(3)-(5).

25. Congress expressly instructed debt collectors to inform consumers that the validation period does not begin until the consumer receives the validation notice to protect consumers against the backdating of collection notices, which would confuse and mislead consumers to believe the validation period may have already run. *E.g., Philip v. Sardo & Batista, P.C.*, 2011 U.S. Dist. LEXIS 130267, at *8-9 (D.N.J. Nov. 10, 2011); *Rivera v. Amalgamated Debt Collection Servs.*, 462 F. Supp. 2d 1223, 1228 (S.D. Fla. Oct. 16, 2006); *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148, 1154 (E.D.N.Y. Aug. 7, 1996).

26. Backdating a letter by several months would confuse and mislead the consumer about when the validation period began. *Compare with Kellar v. Fin. Recovery Servs.*, 2013 U.S. Dist. LEXIS 183836, at *7-9 (D.N.D. Oct. 29, 2013) (awarding summary judgment to debt

4

collector on claim that letter was backdated alleged backdating was one day, and "printing a letter one day and placing it in the mail the following day is a common business occurrence[.]").

27. Even though the validation notice in Exhibit A states that the consumer may "notify this office within 30 days after receiving this notice" to dispute the debt, the confusing and misleading "Date" stated in the header in Exhibit A overshadows and is inconsistent with the disclosure that the consumer has thirty days to dispute the debt. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

28. Moreover, the January 27, 2017 date is also false and misleading because it implies that the amount RPM was attempting to collect was past due as of that date.

29. On or about March 12, 2017, USC mailed Plaintiff a "Cancellation Notice" letter, stating that Plaintiff's service had been cancelled. A copy of this letter is attached to this complaint as Exhibit B.

30. Exhibit B states:

| | |
|---|---|
| Account Number: | ■■■■7543 |
| Payments posted through: | 03/01/2017 |
| Amount Past Due: | $143.44 |
| Total Amt Due: | $148.44 |

Exhibit B.

31. Exhibit B states that, as of March 12, 2017, the "Total Amt Due" on Plaintiff's USC account was $148.44 and the "Amount Past Due" was $143.44, based on "Payments posted through" March 1, 2017.

5

32. Exhibit B was mailed on or about March 12, 2017, more than month after the "Date" stated in the header in Exhibit A.

33. Upon information and belief, as of January 27, 2017, the "Date" stated in the header in Exhibit A, the $148.44 balance that RPM was attempting to collect with Exhibit A was not yet due, let alone past due. *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) (debt collector misleads the consumer about the amount of the debt if it leads him to believe that it is authorized to collect amounts that "might not yet be due, let alone overdue.").

34. The unsophisticated consumer receiving Exhibit A would be misled as to the date of delinquency and the amount of the debt that was purportedly "past due" as of January 27, 2017.

35. The false "Date" is material to the consumer because it has important implications for consumer credit reporting and the date on which the statute of limitations begins to run. *See Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 904-05 (N.D. Ill. June 30, 2015); *Kasalo v. Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1086-87 (N.D. Ill. July 7, 2014); *see also, e.g., Agosta v. InoVision, Inc.*, 2003 U.S. Dist. LEXIS 23889, at *13-15 (E.D. Pa. Dec. 16, 2003); *Brandon v. Fin. Accounts Servs. Team*, 701 F. Supp. 2d 990, 99-93 (E.D. Tenn. Mar. 24, 2010).

36. Upon information and belief, the "Date" stated in the header in Exhibit A serves no purpose other than to confuse, mislead, and deceive the consumer about his validation rights and the amount of the debt.

37. Plaintiff was confused and misled by Exhibit A.

38. The unsophisticated consumer would be confused by Exhibit A.

39. Plaintiff had to spend time and money investigating Exhibit A.

6

40. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

41. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med.*

7

*Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

8

42. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

43. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

44. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of---the character, amount, or legal status of any debt."

45. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

46. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692g states, in part:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

9

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed Debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## **COUNT I -- FDCPA**

48. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

49. The "Date" stated in the header in Exhibit A is months before Exhibit A was actually mailed.

50. The "Date" stated in the header in Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer.

51. Exhibit A is patently misleading and confusing as to the date when Exhibit A was mailed, and would confuse and mislead the consumer about their whether their rights to dispute the debt had lapsed before they actually received Exhibit A.

10

52. Exhibit A is patently misleading and confusing as to the date when Exhibit A was mailed, and would confuse and mislead the consumer about the amount of the debt that was past due as of the "Date" stated on Exhibit A.

53. The "Date" stated in Exhibit A serves no purpose other than confusing, misleading, and deceiving the consumer about his validation rights, and the amount of the debt.

54. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692g(a)(1), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## CLASS ALLEGATIONS

55. Plaintiff brings this action on behalf of a class.

56. The Class is defined as (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit A by Defendant that sought to collect an alleged debt, (c) allegedly incurred for personal, family or household purposes, (d) which states a "Date" in the header, (e) which is more than thirty days before the "Notice Date" stated in the payment remittance slip, (f) where the "Notice Date" is between July 3, 2017 and July 3, 2018, inclusive, (g) and the letter was not returned by the postal service.

57. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

58. Plaintiff's claims are typical of the claims of the members of the Class. All are based on the same factual and legal theories.

59.     Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

60.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

61.     Plaintiff hereby demands a trial by jury.

## RPMYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  July 3, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com